TEXAS COURT OF APPEALS, THIRD DISTRICT, AT AUSTIN







NO. 03-94-00041-CR







Glen Edward Moon, Appellant



v.



The State of Texas, Appellee







FROM THE DISTRICT COURT OF TRAVIS COUNTY, 167TH JUDICIAL DISTRICT


NO. 0921124, HONORABLE LARRY FULLER, JUDGE PRESIDING







 A jury found Glen Edward Moon guilty of aggravated sexual assault of a child and
sentenced him to forty-five years' confinement. See Tex. Penal Code Ann. § 22.021 (West
1994). (1) The trial court rendered judgment accordingly. We will affirm the judgment. 



DISCUSSION


 In his first point of error, Moon complains the trial court erred in not severing
paragraphs one and two of the indictment pursuant to section 3.04 of the Texas Penal Code. See
Tex. Penal Code Ann. § 3.04 (West 1994). Paragraph one of the indictment alleges that Moon
intentionally and knowingly caused the penetration of the female sexual organ of a child with his
sexual organ, while paragraph two alleges Moon caused the penetration of the child's mouth with
his sexual organ. Moon contends that these were two separate offenses requiring severance upon
the request of the defendant, citing Warmowski v. State, 853 S.W.2d 575 (Tex. Crim. App.
1993). Warmowski provides the defendant with an absolute right to sever consolidated indictments
pursuant to section 3.04 of the Penal Code. (2) Section 3.04(a) provides that "[w]henever two or
more offenses have been consolidated or joined for trial under Section 3.02, the defendant shall
have a right to a severance of the offenses." Tex. Penal Code Ann. § 3.04(a) (West 1994). 

 Contrary to Moon's assertion, the indictment simply sets forth two ways in which
the single offense of aggravated sexual assault may have been committed. A single "count may
contain as many separate paragraphs charging the same offense as necessary." Tex. Code Crim.
Proc. Ann. art. 21.24(b) (West 1989); Martinez v. State, 498 S.W.2d 938, 943 (Tex. Crim. App.
1973). In this cause, the two paragraphs contained identical language except for the manner of
penetration alleged. See Offor v. State, 749 S.W.2d 946, 952 (Tex. App.--Austin 1988, pet. ref'd
untimely filed). Because only one offense was alleged in the indictment, Warmowski does not
apply. See Warmowski, 853 S.W.2d 575. We therefore overrule Moon's first point of error. 

 In his second point of error, Moon contends the trial court erred in permitting the
State's expert witness to bolster the child complainant's testimony over defense counsel's
objection. Specifically, Moon complains that Dr. Judith Yeager, a child therapist, should not
have been allowed to relate the substance of her discussions with the complainant during therapy
sessions because this amounted to bolstering the testimony of an unimpeached witness, citing
Duckett v. State, 797 S.W.2d 906 (Tex. Crim. App. 1990), overruled by, Cohn v. State 849
S.W.2d 817 (Tex. Crim. App. 1993); Yount v. State, 808 S.W.2d 633 (Tex. App.--Austin 1991),
aff'd, 872 S.W.2d 706 (Tex. Crim. App. 1993). The Court of Criminal Appeals recently
addressed the bolstering issue in Cohn v. State, 849 S.W.2d 817 (Tex. Crim. App. 1993). In
Cohn, expert testimony concerning certain anxiety behaviors exhibited by child complainants was
held admissible, even though the testimony bolstered the complainants' statements that they were
sexually molested. Id. at 820. The Cohn court specifically disapproved Duckett to the extent that
it held inadmissible relevant expert testimony unless that testimony also served a rehabilitative
function. Id. at 819. Relevant evidence will no longer be excluded simply because it corroborates
the previous testimony of another witness whose credibility was not challenged. Yeager's
testimony as an expert on sexually abused children, was admissible despite the fact that it tended
to corroborate the complainant's testimony. In light of Cohn, we overrule Moon's second point
of error.

 In point his third point of error, Moon complains the trial court erred in not
instructing the jury to disregard an inflammatory outburst made by Charlissa White, Moon's
girlfriend, upon the reading of the jury's verdict. However, no objection was made at the time
of the outburst as required to preserve error. See Rezac v. State, 782 S.W.2d 869 (Tex. Crim.
App. 1990). Conceding at oral argument that no objection was made regarding the outburst,
Moon contends that the outburst was so egregious that the trial court had the duty to instruct the
jury to disregard the outburst pursuant to section 21.001(b) of the Texas Government Code. (3) 
Moon, however, fails to cite any authority which mandates that a court instruct the jury to
disregard spectator comments absent an objection and request for instruction. (4)

 In addition to preserving error, Moon must show that he was harmed by the
outburst. A bystander's remark "which interferes with the normal proceedings of a trial will not
result in reversible error unless the defendant shows a reasonable probability that the conduct
interfered with the jury's verdict." Landry v. State, 706 S.W.2d 105, 112 (Tex. Crim. App.
1985), cert. denied, 479 U.S. 871 (1986). Moon argues that White's conduct in cursing the jurors
before sentencing deliberations resulted in an unusually harsh punishment for Moon and that a
reasonable probability exists that the outburst "vitiated any humane considerations that might have
remained in the hearts and minds of the jury towards the appellant." Moon's appellate counsel
filed an affidavit stating that he telephoned several of the jurors in order to determine the effect
White's outburst on the jury. His affidavit states: 



While none of the jurors questioned were willing to admit that the remarks of Ms.
White adversely affected their deliberations, each juror questioned admitted, that
the incident was discussed in the jury room, albeit not at length. I was also told
that at least one juror expressed concern regarding security and the possibility that
she might encounter Ms. White in the hallway during a break in their deliberations.



 Absent an affidavit from at least one juror stating that White's outburst affected his
or her decision, this Court is unable to determine whether the alleged jury misconduct existed. 
Black v. State, 491 S.W.2d 428 (Tex. Crim. App. 1973), overruled on other grounds, 549
S.W.2d 1 (Tex. Crim. App. 1976). Moon has failed to provide any indication of harm. We
overrule Moon's third point of error. 

 In his final point of error, Moon complains the trial court erred in admitting
evidence of an extraneous offense in violation of his motion in limine and rule 404(b) of the Texas
Rules of Criminal Evidence. (5) Specifically, Moon complains he was portrayed as a "criminal in
general" when the prosecutor cross-examined him regarding a theft charge pending against him.

 The State argues that the theft-charge testimony was not introduced to show
character conformity, but was used for impeachment purposes only. By taking the stand, Moon
put his character for veracity in issue and was thus subject to impeachment like any other witness. 
See Prescott v. State, 744 S.W.2d 128, 130 (Tex. Crim. App. 1988); Hammett v. State, 713
S.W.2d 102, 105 (Tex. Crim. App. 1986).

 As a general rule, specific instances of conduct, such as arrests or charges which
have not resulted in convictions, may not be inquired into on cross-examination. Tex. R. Crim.
Evid. 608(b); Prescott, 744 S.W.2d at 130. An exception exists when a witness, during direct
examination, leaves a false impression that he has never been arrested, charged, or convicted of
prior offenses or that he has never been in trouble with the police. Ramirez v. State, 802 S.W.2d
674, 676 (Tex. Crim. App. 1990); Prescott, 744 S.W.2d at 131; Ochoa v. State, 481 S.W.2d
847, 850 (Tex. Crim. App. 1972). 

 During direct examination, the following exchange transpired:



[Defense Counsel]: "Mr. Moon, you were fired from UPS after you were arrested
on this [sexual assault] charge. Is that correct?"


[Moon]: "That's correct."


[Defense Counsel]: "And you were planning to fight that until such time as you
went to the federal penitentiary because at the time you were arrested on this
charge, they asked to search your house, didn't they?"


[Moon]: "Yes, they asked to search my house."


[Defense Counsel]: "And what did they want to search your house for?"


[Moon]: "They stated that they wanted to search for child pornographic material."


[Defense Counsel]: "And did you give them permission to do that?"


[Moon]: "Yes, sir, I did."


[Defense Counsel]: "And why did you give them permission to do [sic]?"


[Moon]: "Because that is not something I would do or keep around my house."


[Defense Counsel]: "And during that search, did they find the cocaine that you
were convicted of possessing?"


[Moon]: "Yes, they found the cocaine that I was convicted of."


[Defense Counsel]: "Okay. And as a result of that, those arrests and so on, UPS
fired you?"


[Moon]: "Yes, sir, they fired me after the results of all of that." 



 Cross-examination consisted of the following dialogue:



[Prosecutor]: "I asked you about that cocaine use and you kind of acted like it
didn't affect you and [Defense Counsel] asked you about it. And you talked about
getting drug rehabilitation and the bad experiences you had with cocaine. What
bad experiences are you talking about?"


[Moon]: "I'm talking about losing my job that I had for six years."


[Prosecutor]: "Now, you know that wasn't the reason you lost that job. Weren't
you stealing from them?"


[Moon]: "Stealing from them?"


[Prosecutor]: "From UPS?"


[Moon]: "No."


* * *



[Prosecutor]: "When the police were in there, they found stuff you had stolen
from UPS, didn't they?"


[Moon]: "I stole?"


[Prosecutor]: "Well, it was in your apartment. It came in through the area you
worked at. You stole that, didn't you?"


[Defense Counsel]: "Your Honor, again -- again, Your Honor, a deliberate,
willful, intentional violation of the motion in limine, a deliberate, willful,
intentional violation of 404(b) and that is deliberate misconduct. He knows that
there -- that is just -- it's just uncalled for."


[The Court]: "Overruled. You can answer the question."


[Moon]: "What was the question again?"


[Prosecutor]: "You were fired for stealing. You weren't fired because you were
arrested on the drug charges."


[Moon]: "I don't agree with that."


[Prosecutor]: "Well, you had the stolen property that belonged to UPS in your
apartment when the police went there, didn't you?"


[Moon]: "Yes, I did."


[Prosecutor]: "Okay. And you worked on the UPS shipping dock, didn't you?"


[Moon]: "Yes, I did."


[Prosecutor]: "And the stuff that was stolen came through where you worked,
didn't it?"


[Moon]: "It comes not through where I work, no. I don't know where it came
from."



 Moon's direct testimony gave the false impression that UPS terminated Moon's
employment because of his drug arrest rather than the theft allegations. The defense, thereby
opened the door for the prosecution to impeach Moon on a collateral matter. See Bell v. State,
620 S.W.2d 116, 126 (Tex. Crim. App. 1980) (defense counsel opened the door by asking
accused, "Have you anything in your past of a criminal nature?"; prosecution entitled to impeach
using specific instances of conduct); Reese v. State, 531 S.W.2d 638, 641 (Tex. Crim. App. 1976)
(defendant's statement that he had been in trouble with the law in connection with a theft charge
allowed prosecutor to introduce other arrests); Garcia v. State, 454 S.W.2d 400, 406 (Tex. Crim.
App. 1970) (State authorized to introduce previous fights after defendant claimed inexperience as
a fighter). We overrule Moon's final point of error. 



CONCLUSION


 In light of the foregoing, we affirm the trial-court conviction.



 

 John Powers, Justice

Before Justices Powers, Aboussie and B. A. Smith

Affirmed

Filed: March 8, 1995

Do Not Publish

1.   This offense took place before September 1, 1994, and is governed by the law in effect at
the time the offense was committed. Penal Code, 73d Leg., R.S., ch. 900, § 1.18, 1993 Tex.
Gen. Laws 3586, 3705. Because the code amendments effective September 1, 1994, have no
relevance to this appeal, the current code is cited throughout this opinion for convenience.
2.   Warmowski held that failure to sever in accordance with section 3.04(a) is reversible error
not subject to harm analysis. Warmowski, 853 S.W.2d at 578. Thus, we must first address the
applicability of section 3.04(a), even though the jury charge contained only paragraph one of the
indictment, arguably curing any error.
3.   Section 21.001(b) states: "[a] court shall require that proceedings be conducted with dignity
and in an orderly and expeditious manner and control the proceedings so that justice can be done." 
Tex. Gov't Code Ann. § 21.001(b) (West 1988).
4.   Moon cites Landry v. State, 706 S.W.2d 105 (Tex. Crim. App. 1985), cert denied, 479
U.S. 871 (1986); Ashley v. State, 362 S.W.2d 847 (Tex. Crim. App. 1963); People v. Miranda,
744 P.2d 1127 (Cal. 1987). In all three cases, defense counsel moved for a mistrial or dismissal
based on the spectator's comments to the jury. 
5.   Rule 404(b) states: 


 Evidence of other crimes, wrongs, or acts is not admissible to prove
the character of a person in order to show that he acted in
conformity therewith. It may, however, be admissible for other
purposes, such as proof of motive, opportunity, intent, preparation,
plan, knowledge, identity, or absence of mistake or accident,
provided, upon timely request by the accused, reasonable notice is
given in advance of trial of intent to introduce in the State's case in
chief such evidence other than that arising in the same transaction. 



Tex. R. Crim. Evid. 404(b).